IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THOMAS DISGIOVANNI,<br><br>       Plaintiff,<br><br>       v.<br><br>TRANSPORTATION SECURITY ADMINISTRATION and DEPARTMENT OF HOMELAND SECURITY,<br>       v.<br><br>       Defendants. | Case No. 1:13- cv-00005-TMB |

**ORDER**

The Transportation and Security Administration ("TSA") and Department of Homeland Security ("DHS") (together "Defendants") move to dismiss this action based on a lack of subject matter jurisdiction.[1] Plaintiff Thomas DiGiovanni ("Plaintiff") opposes the motion.[2] The parties have not requested oral argument and the Court finds this matter suitable for disposition without oral argument.[3] For the following reasons, the Defendants' Motion to Dismiss is **GRANTED**.

### I.    BACKGROUND

Plaintiff brought this action in the Superior Court for the State of Alaska alleging that Defendants breached the implied covenant of good faith and fair dealing in his employment

---

[1] Dkt. 8.

[2] Dkt. 10.

[3] *See* Fed. R. Civ. P. 58(b); D.Ak. L.R. 7.2(a)(3).

1

contract.[4] Plaintiff claims he was terminated "based on the personal agenda of [his] direct supervisor."[5] He claims damages exceeding $100,000.[6]

Plaintiff began working for Defendants as a TSA Transportation Security Manager in September 2002.[7] Plaintiff alleges that he "received glowing performance reviews for his work as a Transportation Security Manager" from December 2002 until October 2009, when "Terry Shipley ['Shipley'] became the Assistant Federal Security Director for Screening in Southeast Alaska" and his direct supervisor.[8] In August 2010, Shipley and all Transportation Security Managers met to discuss Shipley's management style.[9] Plaintiff alleges that because he voiced concerns about Shipley at the meeting, he was overlooked for various employment opportunities.[10]

In September 2012, Plaintiff was assigned to be the Drug Program Liaison ("DPL") at the Juneau TSA station.[11] At some point after his assignment, Shipley requested a meeting with Plaintiff where he was reprimanded for not following DPL policies and procedures.[12] In December 2012, Plaintiff contacted TSA Ombusdman Jackie Hoffman complaining of his

---

[4] Dkt. 7-1 ¶¶ 31-38.

[5] *Id.* ¶ 36.

[6] *Id.* ¶ 4.

[7] *Id.* ¶ 6.

[8] *Id.* ¶¶ 7-8.

[9] *Id.* ¶¶ 15-16.

[10] *Id.* ¶¶ 18-19. Plaintiff alleges that he was overlooked for a lateral employment opportunity in December 2010 and was also overlooked to act as the Acting Assitant Federal Security Deputy for Screening in Southeast Alaska.

[11] *Id.* ¶ 27.

[12] *Id.* ¶ 28.

treatment by Shipley since October 2009 and asking for advice, assistance, and guidance over how to proceed.[13] Plaintiff also contacted the TSA Office of Inspection on January 7, 2013 regarding the same issues.[14] The TSA Office of Inspection contacted Plaintiff on January 18, 2013 notifying him that his complaint was being forwarded to the Management Inquiries Unit for review.[15]

On April 5, 2013, TSA removed Plaintiff and terminated his employment for failure to follow Standard Operating Procedures, failure to follow procedures, failure to follow instructions, lack of candor, and for failure to exercise supervisor duties.[16] On April 24, 2013, Plaintiff's counsel emailed TSA's counsel a Settlement Demand Letter for his alleged wrongful termination.[17] On May 15, 2013, TSA's counsel notified Plaintiff's counsel that "TSA cannot accept your offer of settlement." On May 22, 2013, Plaintiff filed this lawsuit in Superior Court for the State of Alaska First Judicial District at Juneau.[18] Defendants removed to this Court on June 13, 2013.[19] Defendants now move to dismiss this action for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).[20]

---

[13] Dkt. 10-1 at 7-8.

[14] *Id.* at 1-2.

[15] Dkt 10-2.

[16] Dkt. 11-1.

[17] Dkt. 10-3.

[18] Dkt. 7-1.

[19] Dkt. 1.

[20] Dkt. 8 at 1.

3

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute . . . ."[21] "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction."[22] On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court is not "restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."[23] "Once the moving party [converts] the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."[24]

## III. DISCUSSION

Defendants argue for dismissal because Plaintiff's "exclusive remedy for challenging his removal is limited to the remedies provided by the Civil Service Reform Act (CSRA)," which establishes the Merit Systems Protection Board (MSPB) as the entity to which Plaintiff must appeal his removal.[25] Plaintiff responds that "Defendants have waived their right to object to Plaintiff's failure to appeal the Notice of Decision with the MSPB" and that they should be stopped from raising a defense of failure to exhaust administrative remedies.[26] Plaintiff also

---

[21] *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).

[22] *Thompson v. McCombe,* 99 F.3d 352, 353 (9th Cir.1996).

[23] *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir.1988).

[24] *Savage v. Glendale Union High Sch.,* 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

[25] Dkt. 8 at 4-5.

[26] Dkt. 10 at 3-7.

argues that the case should not be dimisssed, but should instead be transferred to the U.S. Court of Federal Claims.[27]

   1.   Plaintiff's Failure to Appeal to the MSPB

The CSRA provides the exclusive remedies by which Plaintiff may challenge his removal.[28] "[F]ederal courts have no power to review federal personnel decisions and procedures unless such review is expressly authorized by Congress in the CSRA or elsewhere."[29] The CSRA allows an employee who is removed from their position to appeal to the MSPB.[30] Plaintiff does not claim to be seeking a remedy under any other manner expressly authorized by Congress, therefore the appeal to the MSPB is the only procedure by which Plaintiff may contest his removal. Plaintiff concedes that he did not appeal his removal to the MSPB, even though he was given notice in his removal letter that he must do so within 30 days of his removal and was provided a copy of the appeal form.[31]

However, Plaintiff argues that Defendants have waived their right to object to his failure to appeal to the MSPB and that they should be estopped from asserting such a defense.[32] Plaintiff claims that because he sought TSA review of his allegations against Shipley,

---

[27] Dkt. 10 at 7.

[28] 5 U.S.C. § 7501.

[29] *Veit v. Heckler*, 746 F.2d 508, 511 (1984); *See also Blue v. Widnall*, 152 F.3d 1149, 1150-51 (1998) ("As the CSRA does not authorize judicial review of Blue's alleged violations of the VPA, even if those violations deprived Blue of property and procedural rights . . . we lack jurisdiction to review these claims."); *see also Blue v. Widnall*, 162 F.3d 541 (1998) (holding that Plaintiff forfeited any remedies available under the CSRA by failing to present his allegations to the MSPB).

[30] 5 U.S.C. § 7513(d).

[31] Dkts. 10 at 4, 11-1 at 8-10.

[32] Dkt. 10 at 4 -6.

"Defendant's [sic] had every opportunity to initiate administrative procedures relative to Plaintiff's alleged acts of wrongdoing but failed to do so."[33] Plaintiff argues that because Defendants did not investigate his claims against Shipley, they should now be subject to review by this Court.[34] Plaintiff further contends that after he was removed, he submitted wrongful termination claims to TSA's legal counsel but they employed "delaying tactics" by failing to respond to him before the deadline to appeal to the MSPB.[35]

Plaintiff offers no evidence that Defendants intentionally delayed responding to his settlement offer. Plaintiff presents evidence that Defendant received his offer on April 24, 2013, before his deadline to appeal with the MSPB, and that Defendant "took note of his deadline."[36] Defendant rejected his offer on May 15, 2013.[37] However, Plaintiff's own correspondence with Defendant does not note the deadline or request that they respond to his offer by a certain time.[38] Therefore, Defendants' comment that they "took note of his deadline" serves as much to put Plaintiff on notice that he was still required to file an appeal with the MSPB as to prove that they intentionally delayed responding to his settlement offer. Plaintiff also claims that Defendants

---

[33] Dkt. 10 at 5.

[34] *Id.*

[35] *Id.*

[36] Dkt. 10-3 at 1.

[37] Dkt. 10-4.

[38] Dkt. 10-3 at 1-2. The email in which Plaintiff's former counsel transmitted the settlement offer only introduces himself as representing Plaintiff and notes the attachment of a settlement offer. The Court has no evidence to suggest that Plaintiff requested a response by a certain date.

requested extensions of time to respond to his settlement offer, but offers no evidence to support that claim.[39]

Moreover, Plaintiff's argument that his complaint against Shipley constitutes the initiation of administrative action, which negates his need to appeal to the MSPB has little merit. Although Plaintiff did complain to the TSA about Shipley prior to his removal, his complaint to the TSA does not replace the settled procedure of appealing removals to the MSPB. Plaintiff's arguments that Defendants waived defenses or are estopped from asserting them are not properly before this Court. The MSPB is the appropriate entity to which Plaintiff must appeal. Accordingly, Plaintiff has not met his burden of proving that subject matter jurisdiction exists.

2. Transfer to the U.S. Court of Federal Claims

Plaintiff argues that this case should be transferred to the U.S. Court of Federal Claims.[40] Plaintiff argues that because he claims damages exceeding $100,000, the Court of Federal Claims has exclusive jurisdiction under the Tucker Act.[41] It is true that the Tucker Act vests the U.S. Court of Federal Claims with exclusive subject matter jurisdiction over contract claims seeking damages in excess of $10,000.[42] However, Plaintiff is essentially requesting judicial review of a personnel decision, despite his claim that "Defendant breached the [employment contract's] implied covenant of good faith and fair dealing." [43] Federal courts may not review federal personnel decisions in the first instance unless provided for by Congress.

---

[39] Dkt. 10 at 6.

[40] *Id.* at 7.

[41] *Id.* at 7.

[42] 28 U.S.C. § 1491(a)(1); 28 U.S.C. § 1346(a)(2).

[43] 7-1 at 6-7.

7

Further, "Federal employees, both military and civilian, serve by appointment, not contract . . ."[44] "[C]ourts have consistently refused to give effect to government-fostered expectations that, had they arisen in the private sector, might well have formed the basis for a contract or an estoppel."[45] Here, Plaintiff served by appointment.[46] Thus, he may not claim to have had a contract with the United States. Additionally, the U.S. Court of Federal Claims has been clear that "waiver of the time limit for appealing [a personnel decision] is a matter committed to the [MSPB's] discretion and this court will not substitute its own judgment for that of the MSPB."[47] Therefore, the U.S. Court of Federal Claims will not decide whether Plaintiff's failure to file an appeal with the MSPB should be waived. Accordingly, the Court determines that transfer to the U.S. Court of Federal Claims is not appropriate.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for dismissal based on a lack of subject matter jurisdiction (at Dkt. 8) is **GRANTED**. Plaintiff's complaint is dismissed with prejudice.

Dated at Anchorage, Alaska, this 27th day of January, 2014.

/s/ Timothy M. Burgess
TIMOTHY M. BURGESS
U. S. DISTRICT JUDGE

---

[44] *Schism v. United States*, 316 F.3d 1259, 1274-75 (Fed. Cir. 2002).

[45] *Adams v. United States*, 391 F.3d 1212, 1221 (Fed. Cir. 2004). *See also Mendoza v. Merit Systems Protection Bd.,* 966 F.2d 650, 653 (Fed. Cir. 1992).

[46] Dkt. 8, Ex. 1, Ex.2.

[47] *Rowe v. Merit Sys. Prot. Bd.,* 802 F.2d 434, 437 (Fed. Cir. 1986).